UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

     Plaintiff,

                                           Case No. 1:22-cr-16

v.

                                           Hon. Hala Y. Jarbou

DANIEL CASTRO, M.D.,

     Defendant.

_____/

## OPINION

The Government charged Defendant Daniel Castro, M.D., with 42 counts of health care fraud in violation of 18 U.S.C. § 1347. Castro signed a plea agreement and then entered a guilty plea on one count of making a false statement. Before the Court is Castro's motion to withdraw his plea (ECF No. 157). For the reasons herein, the Court will deny the motion.

## I. BACKGROUND

### A. Charges

In the indictment (ECF No. 1), the Government alleges that Castro engaged in various schemes to defraud health care benefit programs. Counts 1 to 12 allege that he performed functional endoscopic sinus surgeries ("FESS") that were not medically necessary. Counts 13 to 22 allege that he routinely "upcoded" his procedures, billing for higher-paying FESS procedures that he did not actually perform. Counts 23 to 26 allege that he billed for FESS procedures involving frontal sinuses when the patients were individuals who did not have frontal sinuses. Counts 27 to 34 allege that he fraudulently billed gland removal and lymph node procedures as a higher-paying, complex neck procedure for cancer. Counts 35 to 42 allege that Castro made

materially false statements about his patients' conditions or about the procedures he performed in connection with the delivery of services and billing for those services.

### B. Withdrawal of Counsel

Castro initially retained attorneys Matthew Borgula and Mikayla Hamilton to represent him. He terminated that relationship in September 2022, causing his attorneys to seek leave to withdraw. (Def.'s Unopposed Mot. for Leave to Withdraw from Representation ¶ 6, ECF No. 46.) The following month, the Court permitted attorneys Ronald Chapman and John Cardello, Castro's newly retained counsel, to take over his representation.

### C. Plea Agreement

On March 19, 2023, Castro signed a plea agreement (ECF No. 122) wherein he agreed to plead guilty to one count of making a false statement to a health care insurer, in exchange for the dismissal of the other counts. As the factual basis for his plea, the plea agreement stipulated that Castro had selected a "Current Procedural Terminology Code (CPT Code)" for a procedure he performed on September 20, 2016, but the code did not match the procedure he actually performed. (Plea Agreement ¶ 8.) Although he had performed a simple "excisional node biopsy," he selected the CPT Code for a more complex and higher-paying procedure. (*Id.*) This conduct resulted in the submission of a false insurance claim to the health insurer, who paid the claim. (*Id.*) According to the plea agreement, Castro knowingly used this false statement "in connection with the delivery of or payment for health care services." (*Id.*)

As part of the agreement, Castro agreed that the loss calculation for purposes of sentencing would be at least $250,000.00, and that "the health care fraud schemes alleged in the Indictment . . . constitute relevant conduct for sentencing purposes." (*Id.* ¶ 14(a).) Specifically, he agreed to the following:

> Defendant understands that the Government will provide factual information to the Probation Officer regarding the conduct underlying counts 1 to 34 that will be included in the Presentence Report and that he cannot object to those facts for purposes of his sentencing, including sentencing loss; however, Defendant may request that the Probation Officer supplement that factual information with additional facts about counts 1 to 34.

(*Id.* ¶ 8.)

Castro also agreed that he entered into the plea agreement "freely, knowingly, and voluntarily[.]" (*Id.* ¶ 22.)  And Castro affirmed that he had reviewed the agreement with his attorney and that he was "satisfied with the representation of [his] attorney in this matter." (*Id.*, PageID.895.)

### D. Castro Emails Former Employer

On March 29, 2023, a little over a week after the Government filed the plea agreement with the Court, the Government informed the Court that Castro had sent an email to employees at Bronson Healthcare, his former employer.  (*See* Govt's Notice Regarding Developments ¶ 3, ECF No. 127.)  Castro's statements in the email appeared to conflict with statements he made in his plea agreement.  For instance, Castro's email stated that, "due to financial hardship, with [his] attorney's advice, [he] had to reach a settlement agreement" with the Government.  (3/21/2023 Email, ECF No. 127-1, PageID.908.)  Regarding the September 2016 procedure mentioned in the plea agreement, Castro acknowledged removing two lymph nodes, but he minimized his responsibility, stating, "Unfortunately, I clicked the wrong CPT code on EPIC[.]" (*Id.*)  He then asked Bronson to "fulfill its contractual obligations" to pay for the financial penalty that he would incur.  (*Id.*)  He argued that Bronson should "recognize[] their responsibility in this unconscionable situation," which resulted from "the lack of oversight and the perpetuation of baseless allegations by certain Bronson Healthcare employees." (*Id.*)  Because of this email, the Government argued

that Castro had not demonstrated acceptance of responsibility. The Government indicated that it would oppose Castro's request for a reduction in his offense level for acceptance of responsibility.

### E. Plea Hearing

The Court held a plea hearing on April 3, 2023. At the hearing, the Court asked Castro's attorney whether Castro intended to plead guilty in light of the email he sent to his former employer. Chapman, Castro's attorney, represented that Castro had "panicked" after signing the plea agreement and "wrote a very ill-advised e-mail," but that Castro still intended to plead guilty. (Plea Hr'g Tr. 3, ECF No. 133.) Chapman also represented that Castro was aware that the Government intended to argue that he does not qualify for a reduction of his offense level for acceptance of responsibility. (*Id.* at 4.)

Castro was then placed under oath. Castro affirmed that he "had the chance to discuss [the plea agreement] thoroughly" with his attorney and that he "had enough time to discuss thoroughly with [his attorney] what [his] situation is, what [his] choices are, and [his] decision to plead guilty[.]" (*Id.* at 13.) Castro affirmed that his attorney was able to answer Castro's questions "to [Castro's] satisfaction" and that Castro was "satisfied overall with the advice and the representation" he had received. (*Id.*) Castro also affirmed that he understood the rights he was waiving by entering his plea as well as the penalties for the offense to which he would be pleading guilty, and that he made his choice to plead guilty "freely and voluntarily." (*Id.* at 16-20.)

The Government then highlighted portions of the plea agreement, including Castro's agreement to cooperate with the Government, Castro's agreement to repay Medicare and Medicaid, Castro's surrender of his medical license, and the fact that the additional counts in the indictment would be considered relevant conduct for purposes of sentencing. (*Id.* at 22-24.) Castro affirmed that he understood all these terms. (*Id.* 26-28.)

When asked about the factual basis for his plea, Castro testified that he "used the wrong templates" and "entered the wrong CPT" code for a procedure.  (*Id.* at 35.)  When asked whether he did that "knowingly and willfully in falsifying that code," he agreed that he had.  (*Id.* at 35-36.) The Government followed up on Castro's assertion that he "picked the wrong template."   The Government asked him whether he "picked that template knowingly and willfully because it contained language that would suggest to the coding department of the hospital that [he] did that procedure," and Castro responded, "I picked the wrong template, yes[.]"  (*Id.* at 36-37.)  The Court told Castro that he had to "plead guilty because [he] want[ed] to plead guilty because [he was], in fact, guilty."  (*Id.* at 37.)  Castro responded, "I do plead guilty, Your Honor.  I do."  (*Id.*)  The Court then asked him, "So . . . when you say you picked the wrong template, you picked a template that stated something that you knew was not correct."  (*Id.* at 37.)  Castro said, "Yes, Your Honor." (*Id.*)  To drive the point home, the Government asked him, "[Y]ou did that because you wanted it to look like you did the neck dissection procedure when you knew that you didn't, right?"  (*Id.* at 38.)  Castro responded, "Correct."  (*Id.*)

The Court further explained:

Doctor Castro, here's why I ask the questions that I ask. I want you to fully know what you're doing. I want you to come in here, tell me what you did, because what I don't want to happen is a week later or months down the line, I don't want you coming back to me and saying you didn't understand that your plea meant certain things or that it had certain consequences or ramifications.

(*Id.*)  With that explanation, the Court asked him, "You fully understand and know what you plead guilty to; is that correct?"  (*Id.*)  Castro said, "I do understand, Your Honor."  (*Id.*)  Finally, the Court asked Castro whether he had "reservations about proceeding and going forward and [the Court] accepting the plea," and he responded, "No, Your Honor."  (*Id.* at 39.)  The Court accepted his plea.

### F. Second Withdrawal of Counsel

In August 2023, Castro's attorneys filed a motion to withdraw as counsel because communication with Castro had "broken down" and Castro told them that he was terminating their legal representation. (Mot. to Withdraw as Att'y ¶¶ 3-4, ECF No. 147.) At a hearing on August 21, 2023, the Court granted counsel's motion to withdraw.

### G. Castro Asks to Withdraw his Plea

At the same hearing, Castro indicated that he wished to withdraw his plea. The Court denied his oral motion and directed him to file one in writing. On September 8, 2023, Castro filed a pro se written motion to withdraw his guilty plea. The Government has responded to Castro's motion (ECF No. 158) and Castro has filed a reply (ECF No. 159). Subsequent to this motion being filed, the Court appointed attorney Parker Douglas to represent him.

## II. ANALYSIS

"A district court may permit a defendant to withdraw a valid guilty plea if the defendant presents the court with a 'fair and just reason for requesting the withdrawal.'" *United States v. Tapia*, No. 22-5226, 2023 WL 2034125, at *5 (6th Cir. Feb. 16, 2023) (quoting Fed. R. Crim. P. 11(d)(2)(B)). The "purpose" of this rule is

> to allow a hastily entered plea made with unsure heart and confused mind to be undone, not to allow a defendant to make a tactical decision to enter a plea, wait several weeks, and then obtain a withdrawal if he believes that he made a bad choice in pleading guilty.

*Id.* (quoting *United States v. Alexander*, 948 F.2d 1002, 1004 (6th Cir. 1991)) (internal quotation marks omitted); *see United States v. Sydnor*, 762 F. App'x 284, 288 (6th Cir. 2019) ("The idea behind Rule 11 is to provide a rare remedy for 'real confusion or misunderstanding' about the plea agreement, not for buyer's remorse." (quoting *United States v. Ellis*, 470 F.3d 275, 281 (6th Cir. 2006))). "When a defendant has entered a knowing and voluntary plea of guilty at a hearing at

which he acknowledged committing the crime, the occasion for setting aside a guilty plea should seldom arise." *Ellis*, 470 F.3d at 280 (quoting *United States v. Morrison*, 967 F.2d 264, 268 (8th Cir. 1992)).

Castro "bears the burden of proving that he is entitled to withdraw his guilty plea." *Id.* The Court considers the following "non-exclusive, non-controlling" factors when determining whether there is a "fair and just reason" for withdrawal of the plea:

> (1) the amount of time that elapsed between the plea and the motion to withdraw it; (2) the presence (or absence) of a valid reason for the failure to move for withdrawal earlier in the proceedings; (3) whether the defendant has asserted or maintained his innocence; (4) the circumstances underlying the entry of the guilty plea; (5) the defendant's nature and background; (6) the degree to which the defendant has had prior experience with the criminal justice system; and (7) potential prejudice to the government if the motion to withdraw is granted.

*Tapia*, 2023 WL 2034125, at *5 (quoting *United States v. Bashara*, 27 F.3d 1174, 1181 (6th Cir. 1994)).

### A. Length of Time Between Plea and Motion to Withdraw Plea

"The shorter the delay [between the plea and the motion to withdraw the plea], the more likely a motion to withdraw will be granted, and a defendant's reasons for filing such a motion will be more closely scrutinized when he has delayed his motion for a substantial length of time." *United States v. Baez*, 87 F.3d 805, 808 (6th Cir. 1996).

Castro asked to withdraw his plea over four months after his plea hearing. The Court of Appeals has found that shorter lengths of time favor the Government. *See, e.g.*, *United States v. Carson*, 32 F.4th 615, 624 (6th Cir. 2022) (59 days); *United States v. Catchings*, 708 F.3d 710, 718 (6th Cir. 2013) (two months); *United States v. Martin*, 668 F.3d 787, 795 (6th Cir. 2012) (95 days). Thus, this factor favors the Government.

**B. Reason for Delay**

It is difficult to discern the reason for Castro's delay in presenting his request. He argues that, when he entered his plea, he assumed that Chapman had adequately prepared for trial, but he "later discovered" that was not the case; he believes Chapman "pressure[d]" him to plead guilty due to Chapman's lack of preparation. (Def.'s Mot. to Withdraw Plea 2, 3.) Later in his motion, however, Castro suggests that he discovered Chapman was not adequately prepared for trial *before* Castro pleaded guilty. (*See id.* at 4 ("During this time, it became evident that [Chapman] had not adequately prepared for trial. Despite Castro's determination to present his case before the Court, Attorney Chapman urged him to plead.").) If that is the case, then discovery of counsel's lack of preparedness does not explain the delay in seeking to withdraw the plea.

Moreover, Castro's assertions that Chapman was not prepared and that Castro felt pressured to plead guilty are contradicted by Castro's sworn testimony at his plea hearing. At that hearing, Castro testified that that he discussed the case with his attorney, that he was satisfied with counsel's representation, that his choice to plead guilty was made freely and voluntarily, and that he had no reservations about that choice.

Castro also argues that "[t]he stipulations leading up to the PSR Report displayed significant disparities in comparison to the original plea agreement." (*Id.* at 5.) Castro does not identify or explain these disparities. At any rate, the Court does not intend to issue a sentence that would violate the plea agreement. In summary, this factor favors the Government.

**C. Assertion of Innocence**

"A defendant's 'vigorous and repeated protestations of innocence' may support the decision to allow withdrawal of a guilty plea." *Carson*, 32 F.4th at 624 (quoting *United States v. Carpenter*, 554 F. App'x 477, 482 (6th Cir. 2014)). "However, claims of innocence are not convincing when the defendant has vacillated over time." *Carpenter*, 554 F. App'x at 482.

8

Castro contends that he is innocent of making a false statement, but he has not been consistent in making that assertion. He admitted the facts supporting this charge in his written plea agreement and at the plea hearing. True, he has at times shown reluctance to admit full responsibility for making a false statement, but his vacillation undermines his assertion of innocence. *See Carson*, 32 F.4th at 624 (weighing this factor against a defendant who "made a knowing and voluntary guilty plea" and who "specifically acknowledged as true the plea agreement's statement of facts"). This factor favors the Government.

### D. Circumstances Underlying Entry of Guilty Plea

The circumstances underlying the guilty plea do not favor Castro. He had ample opportunity to consider his decision between the date he signed the plea agreement and the date he entered his guilty plea in court. Furthermore, he entered that plea after sending an email that appeared to minimize his responsibility for making a false statement. The Court focused on that issue at the plea hearing, asking him whether he intended to plead guilty and whether he knowingly made a false statement. Castro repeatedly affirmed his choice to plead guilty and acknowledged that his conduct was willful and knowing. At no point did he express any dissatisfaction with counsel or any reservation about pleading guilty. Although he now contends that he was given "a mere 24-hour window" to sign the plea agreement (Def.'s Mot. to Withdraw 3), he told the Court under oath that he had ample time to discuss the agreement with his attorney (Plea Hr'g Tr. 13). Moreover, two weeks passed between the date he signed the agreement and the date of the plea hearing. Thus, he also had time to consider his choice after he signed the agreement.

In support of withdrawing the plea, Castro contends that Bronson "failed to provide" and "deliberately destroyed" "exculpatory evidence," i.e., "original patient intake forms" completed by his patients. However, the Government informed Castro's attorney in September 2022 that Bronson did not retain these forms. (*See* 9/12/2022 Letter to Counsel, ECF No. 158-1,

PageID.1068.) Instead, hospital staff entered the information from these forms into Bronson's electronic records. (*Id.*) Thus, Castro was aware of these circumstances when he decided to plead guilty. In other words, he knew that he did not have access to these forms; nevertheless, he made the choice to enter a guilty plea. These facts do not provide a sufficient basis for withdrawal. Moreover, it is not clear why the intake forms would be relevant to Castro's guilt or innocence regarding his false statement about the procedure he performed.

Castro argues that the Government violated its obligation under *Brady v. Maryland*, 373 U.S. 83 (1963), to disclose exculpatory evidence because they did not disclose the intake forms. However, that argument is unsupported. There is no evidence that the intake forms still exist, let alone that the Government has them in its possession.

Castro also contends that he was not adequately informed "of the full consequences stemming from his plea, particularly regarding the potential lifetime incarceration and subsequent forfeiture of his professional vocation, reputation, continued vulnerability to lawsuits, travel restrictions, and the loss of his right to vote." (Def.'s Mot. to Withdraw Plea 4.) Contrary to this assertion, the Court discussed the maximum penalty for his charge at the plea hearing, which is five years of imprisonment, not lifetime imprisonment. (Plea Hr'g Tr. 15.) Castro acknowledged that he understood this penalty. (*Id.*) The Court also told him that his plea agreement meant that he would be surrendering his medical license and that he was agreeing to not practice medicine in the future. (*Id.* at 39.) Castro acknowledged his understanding of these consequences as well. (*Id.*) Thus, he was aware of the potential penalty and the vocational consequences when he entered his guilty plea.

To the extent Castro asserts ignorance about the loss of his right to vote or restrictions on his ability to travel, those are not the sort of consequences that must be explained to a defendant

"in order to insure that the plea is voluntary."  *See United States v. Daas*, No. 95–3310, 1995 WL 583384, at *3 (6th Cir. Oct. 3, 1995) (noting that right to vote and the right to travel feely abroad are "collateral consequences" of a guilty plea).  Similarly, the Court is not persuaded that ignorance of these consequences is a "fair and just reason" for withdrawal of a guilty plea.  *See United States v. Sanchez*, 247 F. App'x 951, 952 (9th Cir. 2007) (affirming that failure to inform a defendant of the collateral consequences of a guilty plea was not a fair and just reason for withdrawal of that plea); *United States v. Fofana*, 211 F. App'x 659, 660 (9th Cir. 2006) (same); *see also Nunez Cordero v. United States*, 533 F.2d 723, 726 (1st Cir. 1976) (holding that a court is not required to permit withdrawal of a plea where the defendant learns after his plea that he will be subject to collateral consequences).

Rule 11 does not require the Court to inform a defendant of collateral consequences at the time of the plea.  *See United States v. Rodriguez-Gonzales*, 543 F. App'x 532, 535 (6th Cir. 2013). Consequently, this Court typically does not discuss such consequences at plea hearings.  If the Court were to permit withdrawal on this basis, then potentially every defendant would be entitled to withdraw their plea before sentencing, which is inconsistent with the "rare remedy" of withdrawal contemplated by Rule 11.  *See Sydnor*, 762 F. App'x at 288.  Thus, Castro's reliance on those consequences for withdrawing his plea is not persuasive.

In addition, Castro argues that the plea agreement "underwent significant and substantial alterations" that "compounded his confusion."  (Def.'s Mot. to Withdraw Plea 2.)  However, the plea agreement did not change between the time he signed it and the time he entered his plea. Moreover, he did not express any confusion, concerns, or reservations about the terms of the agreement at his plea hearing.  Accordingly, his confusion is not credible.

In short, this factor weighs in the Government's favor.

11

### E. Defendant's Nature and Background

Defendant is a former medical doctor who is well educated and is capable of understanding all the consequences of his decision to plead guilty.  On the other hand, Castro contends that he is in "declining health" and is at an "advanced age (72)." (Def.'s Mot. to Withdraw 4.)  These conditions "arguably" weigh in his favor.  *See United States v. Dixon*, 479 F.3d 431, 437 (6th Cir. 2007) (concluding that hearing difficulties and heart ailments "arguably" favored the defendant).  On the whole, however, this factor favors the Government.

### F. Prior Experience with the Criminal Justice System

It appears that Castro has no prior experience with the criminal justice system, which weighs in his favor.

### G. Potential Prejudice to the Government

Neither side argues this factor, so the Court will not consider it.  Moreover, it is Castro's burden to demonstrate that there is a fair and just reason for allowing withdrawal.  It is not the Government's burden to establish prejudice.  *See Ellis*, 470 F.3d at 286.  Castro has not met his burden.

### III. CONCLUSION

After considering all the factors, the Court finds that Castro has not provided a fair and just reason for withdrawal of his plea.  Accordingly, the Court will deny his motion.

The Court will enter an order consistent with this Opinion.


Dated: November 8, 2023                                    /s/ Hala Y. Jarbou
                                                           HALA Y. JARBOU
                                                           CHIEF UNITED STATES DISTRICT JUDGE